IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 1, 2017

## IN RE JAIDEN A.

**Appeal from the Circuit Court for Scott County**
**No. 2016-CV-8996 John D. McAfee, Judge**

_____

### No. E2016-02421-COA-R3-JV

_____

This is a dependency and neglect case. After adjudication of dependency and neglect, the juvenile court granted custody to the child's paternal grandparents. Mother/Appellant appealed that decision to the circuit court. Because the circuit court did not conduct a de novo hearing, we vacate its order and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Vacated and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and W. NEAL MCBRAYER, JJ., joined.

Mark R. Orr, Knoxville, Tennessee, for the appellant, Maxine W.[1]

Max Huff, Oneida, Tennessee, for the appellee, Dustin A.; Herbert H. Slatery, III, Attorney General and Reporter, and Kathryn A. Baker, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

### OPINION

The minor child, Jaiden A., was born in December 2013. The child's mother is Maxine W. ("Mother," or "Appellant"); the child's father is Appellee Dustin A. ("Father"). On May 19, 2014, Appellee Tennessee Department of Children's Services ("DCS") received a referral alleging that the child was the victim of physical abuse. On the same day, a DCS caseworker responded to the Pediatric Intensive Care Unit at the local children's hospital. Jaiden was diagnosed with a traumatic brain injury with no metabolic cause. The caseworker met with Jaiden's doctor on June 17, 2014. The doctor

_____

[1] In cases involving minor children, it is the policy of this Court to redact the parties' names so as to protect their identities.

opined that Jaiden's brain injury was caused by non-accidental trauma. None of the child's adult caregivers were able to provide a reasonable explanation for the child's injuries.

On June 19, 2014, DCS petitioned the Juvenile Court of Scott County for temporary legal custody of the child. On or about June 20, 2014, the juvenile court entered an ex parte order granting DCS's petition. Following a preliminary hearing, on June 23, 2014, the juvenile court found probable cause of dependency and neglect based on the "traumatic brain injury of the child ruled non-accidental by a physician." The court granted custody to DCS, granted supervised visitation to Mother and Father, and entered a no-contact order against Rylen S.,[2] Mother's boyfriend. The juvenile court also appointed a guardian ad litem for the child.

Following a status hearing on September 8, 2014, the juvenile court ordered Mother, Father, and Rylen S. to submit to psychological testing and paternity testing. Following a status hearing on November 10, 2014, the juvenile court noted that the psychological evaluations had been completed, but the court had not received the reports. The order notes that, since the last status hearing, Jaiden suffered another brain bleed, which required extensive therapy. The court ordered Jaiden to remain in DCS's custody with placement in a "medically fragile foster home."

The juvenile court held a third status hearing on December 1, 2014. By order of December 8, 2014, the juvenile court established Father as Jaiden's biological father (based on DNA test results). The juvenile court noted that the child "is suffering from anxiety; the child is receiving speech therapy, occupational therapy, and physical therapy." By its December 8, 2014 order, the juvenile court expanded Mother's supervised visits from thirty minutes per week to one hour per week; Father was granted up to four hours of visitation each week.

On May 11, 2015, the juvenile court heard Mother's petition for additional visitation. By order of May 26, 2015, the juvenile court denied Mother's petition due to "the severity of the allegations and injuries to the minor child . . . as well as the unknown origin/individual responsible for same." The order further states that "Mother and her boyfriend, Ryl[e]n S[.], have yet to take polygraph exams despite previous suggestions of the Court that it would assist in determining the propriety of re-unification." Thereafter, on December 14, 2015, the juvenile court ratified a permanency plan, with the goal of reunification. On the same day, the juvenile court held an adjudicatory hearing. By order of December 15, 2015, the juvenile court found that Jaiden was dependent and neglected and ordered custody to remain with DCS. The court's order further states that "[j]udge would like to see a move to custody with paternal grandparents. Court wants to see Ryl[e]n S[.] take a TBI polygraph and if it shows no deception court will heavily consider

_____
[2] Rylen S.'s name is spelled "Rylen," "Rylin," and "Rylan" throughout the record.

- 2 -

the Mother [for custody]. . . ."

Following a review hearing, on March 14, 2016, the juvenile court entered an order, stating that "the child has been placed with the paternal grandparents . . . . Ryl[e]n S[.] has not completed a polygraph exam." The court noted that the TBI would not perform the polygraph and that it would have to be obtained privately. Following a status hearing on April 11, 2016, the juvenile court entered an order, noting that "[t]he polygraph has not been completed; DCS requests that the custody of the child be released to the grandparents; the Court finds that the child was severely abused but cannot identify the perpetrator and to date there has been no factual finding that the mother was the perpetrator." The juvenile court awarded legal custody of Jaiden to his paternal grandparents. On April 15, 2016, Mother filed a notice of appeal to the Circuit Court for Scott County (the "trial court"). The notice of appeal specifies that Mother appeals the juvenile court's order "transferring custody to the paternal grandparents . . . and thereby denying parental reunification with the Mother . . . ."

The case was heard by the trial court on September 21, 2016. On October 6, 2016, the trial court entered an order affirming the juvenile court's April 11, 2016 order. In relevant part, the trial court's order states:

> This cause came on to be heard . . . on . . . Maxine W[.'s] Notice of Appeal from the custody Order of the [juvenile court]. . . . Counsel for Respondents were present at the hearing as well as the attorney for [DCS]. Based upon the arguments of counsel and the record as a whole, it appears to the Court that the ruling of the Juvenile Court Judge requiring that polygraph results be filed on behalf of . . . Maxine W[.], and her fiancé, Rylen S[.], as a prerequisite to any future consideration of regaining custody of the minor child . . . and the placement legal and physical custody of the minor child with the paternal grandparents . . . was correct under the circumstances and a legally permissible requirement imposed upon the Respondent by the Juvenile Court.
> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED as follows:
>    1. That the Juvenile Court's Order from April 11, 2016 awarding legal and physical custody of the minor child to [the paternal grandparents] is hereby affirmed.

Appellant filed a motion to alter or amend the trial court's order, which motion was denied by order of April 18, 2017.

Maxine W. appeals. She raises one issue for review as stated in her brief, to-wit:

Did the trial court err in ruling the Appellant's fiancé, who was not a party to the proceedings, must submit to polygraph testing and file the same with the Court prior to its consideration of reunification or an increase in parental visitation where the Appellant mother had previously completed all other reunification requirements according to the Permanency Plan?

In the context of appeals from orders entered by the juvenile court in dependency and neglect cases (such as the case at bar), the circuit court does not act as a reviewing court; rather, the circuit court is charged with conducting a de novo trial. Specifically, Tennessee Code Annotated Section 37-1-159(a) provides, in relevant part, that:

(a) The juvenile court shall be a court of record; and . . .[a]ny appeal from any final order or judgment in [a] . . . dependent and neglect proceeding, filed under this chapter, may be made to the circuit court that **shall hear the testimony of witnesses and try the case de novo**.

(Emphasis added). Appellant's Tennessee Rule of Appellate Procedure 24(c) statement of the evidence, which is included in the appellate record, states, in relevant part, that:

6. At the commencement of the Circuit Court appeal hearing, the Court inquired whether the parties intended to introduce evidence, or whether the sole issue on appeal was the issue of whether the Scott County Juvenile Court could require an individual not a party to the proceedings, to engage in polygraph testing and submit the results to the Court, prior to considering reunification.
7. Counsel for Respondent argued that such polygraph examinations are inadmissible, under Tennessee law, and that Ryl[e]n S[.] was not a party to the lawsuit. Therefore, the ruling of the Juvenile Court was improper and should [be] reversed by the Circuit Court.
8. . . . Attorney for DCS . . . and Attorney for Respondent, Dustin A[.], argued to the contrary that such a requirement was not against Tennessee law and should be upheld by the Circuit Court.
9. Upon conclusion of arguments at [the] hearing of Respondent's appeal from the April 11, 2016 custody order of the Scott County Juvenile Court, the Circuit Court opined that polygraph testing may be admissible in the context of civil litigation . . . and the Juvenile Court did not err in requiring Ryl[e]n S[.] to submit to polygraph examination . . . .
10. The Court stated that it would accept legal briefs of the parties on the issue and would reconsider its order if necessary.

From the uncontested statement of the evidence, the trial court reviewed the juvenile court's record, allowed the parties to brief the issues, and decided the issues following oral arguments by the attorneys. Respectfully, this is not the purview of the circuit court in dependency and neglect appeals. Rather, as set out in context above, in such appeals, Tennessee Code Annotated Section 37-1-159(a) mandates the circuit court to "hear the testimony of witnesses and try the case de novo." By way of comparison, Tennessee Rule of Appellate Procedure 13(d) vests the Tennessee Court of Appeals with power to conduct a de novo **review** but not a de novo **trial**, i.e., "**review** of findings of fact by the trial court in civil actions shall be de novo upon the record. . . ." Tenn. R. App. P. 13(d) (emphasis added). Because the circuit court does not perform a reviewing function in appeals from dependency and neglect proceedings, it was incumbent on the circuit court to hear the evidence anew and make its own findings in the case rather than hearing arguments of counsel and ruling on whether the juvenile court was correct in its placement decision and its ruling on the polygraph test.

Because the circuit court failed to fulfill the requirements of Tennessee Code Annotated Section 37-1-159(a) to conduct a trial de novo, we vacate its order and remand for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed one-half to the Appellant, Maxine W. and her surety, and one-half to the Appellee, Dustin A., for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE